Your Honor, I apologize, but my line was being activated and so I did not hear what you said there for a minute because I was hearing a recording message telling me my line was activated. Excellent. That means you can't say I made a mistake in pronouncing it. Well, then let me tell you. It's Bernandino Bolatete. Okay. Yeah. I remember that's exactly what I said, so you go ahead with your argument. Thank you, Your Honor. May it please the Court, my name is Lynn Bailey and I represent Mr. Bernandino Bolatete. I would like to focus my argument on the unconstitutionality of the criminal offense in 18 U.S.C. 5641D because it exceeds Congress' power to tax. And specifically, it's unconstitutional as applied to a downstream transferee of an unregistered silencer. Before diving into the taxing power, I want to first note a couple of observations about this criminal statute that are relevant and pertinent to my argument. First, Section 5861D criminalizes the possession of an unregistered silencer. Twenty years after enacting the National Firearms Act, Congress added this offense in 1954 as a possessory offense bottomed on the failure to register and complement the existing offenses that were based on making or transferring the pertinent firearms. Second, one of the statutory features that's very important is the elements. To support a conviction under 5861D, the government need not prove that the transferee knew that the silencer was not registered. As such, the transferee doesn't have any need to know that the $200 so-called transfer tax was not paid on the silencer. And third about the statute, what's more, is that the transferee cannot pay this $200 transfer tax in order to legitimize his possession. Only the transferor can pay it. Counsel, this is Robert Lusk. Let's assume for the moment I agree with you completely that it is a violation of Congress' taxing power. How as a panel member could I, and I won't speak for my other fellow panel members, get around the Spork or Sporky opinion and our earlier cases from the former Fifth Circuit that have upheld this very provision? Yes, Your Honor. We submit that the Sporky opinion and the Ross opinion from the Fifth Circuit and Matthews are distinguishable because they were, insofar as they were different as-applied challenges from the as-applied challenge we are making here. Critically, here are some of the differences. In Sporky, the defendant there was a maker, not a transferee. It was a homemade pipe bomb that he made, not a silencer. And he raised a completely different argument. He argued that it was impossible to register the pipe bomb, whereas here we're arguing that the transferee's punishment does not aid the revenue purpose of the statute. And in Ross, we have similar distinctions. Ross was again a maker of a Molotov cocktail. Counsel, I'm looking at Sporky. I have it in front of me. I'm looking at pinpoint site 12 of 42, where he was charged not just with unlawful making, but with possessing unregistered destructive devices pursuant to this very subsection that your client is charged with, right? Yes. Yes, sir. Again, then I'll go back to my question. How could I possibly, as a panel member, not be bound by both the facial and as-applied challenges to your client's conviction? Because both my client and Sporky, you're right, that they were both charged with the possession. However, it still makes a difference in the argument, in my argument, that he was a homemade maker, whereas he was not transferee. I don't see how that fact – well, I mean, they both were charged with possessing, and they both did possess. I'm just having trouble seeing that also the fact that Mr. Sporky, or Sperky, made the device, the pipe bomb in that case, how that affects the taxation argument, how that's connected there. In other words, even if it's a distinguishing fact in general, I don't see how that's a distinguishing fact for the taxation purposes, which, as I understand your argument, rely on the fact that the Department of Justice rather than the IRS does this, that there's very little collections, that the punishment has been enhanced but the tax has not, some of the factors you argued in your brief and that were argued in the Cox case. Yes, Your Honor, and I think maybe the extra point here is that the transferee doesn't need to know that the firearm was unregistered. But the question is, what does that have to do with the taxing power of Congress? Actually, exactly that. It doesn't have anything to do with the taxing power of Congress, which is why – No, what does the distinction have to do? If it has nothing to do with the taxing power of Congress, then there is no distinction. I mean, you're arguing it's unconstitutional because there's no distinction. I'm sorry, you're arguing it's unconstitutional because it exceeds the power of Congress to tax. Well, if it exceeds the power of Congress to tax here because it has nothing to do with taxation, then why didn't it do it in the Sporky case? Yes, Your Honor, and I would submit that the – what's different is that – why I keep focusing on the maker or the transferee is because a maker, particularly of a danger of a destructive device like a pipe bomb or a Molotov cocktail, has some knowledge that the item would be prohibited. And the transferee who receives the silencer doesn't necessarily have that argument. Yes, but the problem we're having is figuring out what causal link that is to the taxing power's legitimate scope. What the defendant – I mean, we get taxed all the time for things we didn't know were taxable events or transactions or occurrences. But nobody's ever suggested that that means that the IRS reg or the Congressional Act is therefore an invalid exercise of the taxing power. Yes, Your Honor, and I think to answer your question requires looking at the taxing power as a whole and recognizing that it is limited and it does not allow Congress to control individual conduct the way that the Commerce Clause power does. And when you lay the tax and then you – Counsel, if that's true, though, that would be true of making, transferring, and possessing. I mean, it'd be true of all of it. Your Honor, it makes more sense to me to impose it on the maker or the transferor. And there are separate provisions of 5861 that do punish the maker and the transferor because they are the ones who are responsible for paying the tax. So there perhaps could be some rational basis for punishing them for not paying the tax that they are obligated to pay. But here what you're doing is you're punishing the transferee with 10 years in prison for – ostensibly or purportedly for some tax that someone else is required to pay and that he doesn't even need to know whether it was paid or not. Well, again, the problem I'm having, Counsel, and again, I can only speak for myself, is not that I'm not hearing you or unsympathetic to the argument. It's that we have a case that seems to be directly on point with the same exact charges where we addressed similar, although not the exact arguments that you're making. I'm just having trouble getting around that we're bound by our precedent on this. And it may be that we shouldn't be bound and it may be that the en banc court or the Supreme Court should take this issue up. But for a panel member, I'm having trouble trying to get around what I think the law is and that governs my decision in the case. Yes, Your Honor, and to be clear, if the panel finds that you are bound by a prior precedent, we do submit that the issue should be taken en banc or by the Supreme Court. However, I do think that the court can weave, because of the differences and the as-applied challenges, there is room to rule in Mr. Bolletetti's favor without being controlled by Spierke and Ross. I do know that they made different arguments. In Spierke, he was arguing it was impossible to register the pipe bomb. And in Ross, he was arguing that his tax was confiscatory. And here, what we're really arguing is that the punishment of this downstream possessor, this downstream transferee, does not aid any revenue purpose in the collection of the tax. What do I make of the fact that the very similar, if not the same, arguments were made in the Cox case? The Tenth Circuit ruled against those arguments, and the Supreme Court very recently denied certiorari. Yes, Your Honor. We don't agree with the Cox case, with the result there. And I do think they were similar arguments to some extent, but to some extent they're not. Because they don't focus on this aspect of the transferee not needing to know that the registration, that the item was unregistered, and they don't focus on the position of the defendant as the transferee. So we disagree with Cox. We submit that it's wrongly decided, but it also does not answer the question that we're posing today, and the argument that we're putting forth. We submit that... Yes, Your Honor? I was going to ask you if you had anything else. No, Your Honor. If the court doesn't have any other questions at this time, I can just reserve my time for rebuttal. You have your full three minutes. We'll hear now from Mr. Scholl. Thank you, Your Honor. Peter Scholl on behalf of the United States. I would simply pick up on the court's assessment of the constitutional claims regarding the Taxing Clause and Tenth Amendment arguments. The Supreme Court's decision in Kaczynski was a very broad holding that the levy in that case was not a true tax, but a penalty imposed. It rejected the argument that the levy in question was not a true tax, but a penalty imposed for the purpose of suppressing traffic and certain types of firearms that was the regulation of which was reserved to the states. That's a tougher argument to rely on that particular case because of what counsel said, which is that the possession charge, the statute that is issued here, was added in 1954. It's harder for me to see that upholding of a statute that didn't exist somehow binds what we have. I understand that, Your Honor, but I think what becomes important then is how this court has subsequently applied it in other contexts, including the Sperky and Ross context, which as Your Honor, and I believe Judge Carnes also pointed out, are much broader and much more applicable to this particular case. I think that the Cox case in particular, which Your Honor was referring to, which recently, as you said, was cert denied, really did address some of the arguments regarding the manner in which historical facts have evolved since Kaczynski and since the adoption of the National Firearms Act. But notwithstanding that, those historical developments, most of which were already in place before this court decided Sperky, really were already, you know, they don't change the constitutional analysis as had been established by the Kaczynski case. Although, so I take the court's point regarding the fact that it was a slightly different statute, but the overall premise of the use of the constitutional taxing authority in a variety of ways under the National Firearms statute is still equally applicable. And then when this court interpreted Kaczynski and applied Kaczynski in various other contexts that are similar to this case, Sperky in particular, applied it in a way that really forecloses the 10th and Second Amendment arguments that are in play here. Well, what about counsel, what about the argument that she's making that we can distinguish these cases because here we are faced with a defendant who didn't have the option of paying the tax to avoid implicating this statute? Well, I think that the question also then becomes whether and to what extent any provision of the act is properly applied or enacted in aid of the tax. And I think, I'm looking here, I think it's the Ross case in particular talked about a transfer tax under 5861D and the accompanying registration requirement, which isn't necessarily linked to the tax. And to that extent, I would think the Ross case would address the concern that your honor is referring to there. But counsel, wasn't that same argument made in Sperky that he couldn't register the pipe bomb? And counsel, would the court there rejected that argument with regard to the taxation and the 10th Amendment issue? Yes, I believe it was. So in other words, it's not an impossibility test. The taxation clause issue has nothing to do with the impossibility of registering or not, right? No, I think they're two distinct questions. And let's focus on the facts of this case. What kind of firearm did, what kind of silencer did Mr. Botetti, if we're talking about an ad supply challenge, did he specifically ask for? He asked for an unregistered silencer. I don't know any other technical details about it. I'm not sure what your honor is getting at there. No, that's what I'm getting at. Did Detective Cohen even offer him an unregistered silencer? No, I think the concept of an unregistered silencer initially came from Mr. Botetti. In other words, it wasn't that he was, in other words, his defense was not that, oh, I would have, if you hadn't arrested me, I was on my way to paying the registration fee or to getting a stamp on this thing. His argument was, I was entrapped into doing exactly what I did. Correct. I would think the response to the earlier question you would ask about what about the fact that you couldn't, the transferee couldn't pay the tax, is that making that the law is in aid of Congress's taxing power because it increases the incentive for the original possessor, owner, to pay the tax to make the, in this case, silencer have more market value because it doesn't violate the law and it's part of the taxing power. I think that, I'm sorry, Judge Reiner. Go ahead. No, I think that's right, and I think that's what I was trying to get at before when I was bringing up the fact that some of this court case, I believe it was the Ross case, did talk about the fact that the registration requirement was something that was in aid of the taxing provision or the enforcement of the tax which was adopted pursuant to the taxing power. So, I think, you know, realistically, to the extent that we're talking about the general question regarding the proper implementation of the taxing power and in a way that does not run afoul of the Tenth Amendment's reservation of police powers to the states, when we're talking about that, you know, those constitutional principles are applied without necessarily, you know, getting bogged down in the technical aspects of the nature of the particular devices involved. I think Ms. Bailey was referring to the fact that several of the devices involved in these cases were different from a silencer or none of them involved silencers, and I just don't see how that really makes any difference at all for purposes of the constitutional analysis. And as I said before, I do think that with respect to the various historical developments over the years, those things were in place prior to Sporky, and for the reasons that the Cox Court recently discussed in the Tenth Circuit, I believe, those arguments wouldn't really change the constitutional analysis either for our purposes in terms of applying the taxing clause. So, bear with me a second, Your Honor. I'm just looking to see if I have any other points to make regarding the taxing clause and the commerce, I'm sorry, the Tenth Amendment argument. I don't really have any more points to make regarding the Tenth Amendment and taxing clause arguments at this point. So, unless the Court has any questions regarding the entrapment issue or the enhancement issue or the substantive reasonableness issue, I would submit on the papers and on comments here today. Thank you, Ms. Sho. Ms. Bailey, three minutes. Yes, Your Honor. There are a few points I wanted to address. But the transferee could determine whether the tax was paid or not before purchasing the weapon by asking the transferor and asking for some evidence of it. Couldn't the transferee? Yes, Your Honor, he could. But I think at some point when we're talking about the connection between the taxing power and this criminal statute punishing the transferee, there's only so many links and attenuation before we decide that this is overwhelmingly a punitive statute and not a taxing statute. Well, that's just one link, isn't it? The transferee asked the transferor, was the tax paid on this and what evidence do you have? Well, it's even easier than that because there's actually a tax stamp, isn't there not, counsel? Yes, Your Honor. And the tax stamp is actually on the product, right? Yes, Your Honor. But there's something offensive about claiming to incentivize the transferor's conduct to pay the tax because Congress needs to collect the tax. There's something offensive about claiming to incentivize the transferor's conduct by imprisoning the transferee and shifting the burden of knowledge and the burden to inquire about the tax stamp to the transferee all in the name. Because what we're trying to do, it's not necessarily, I'm not raising a due process argument that it's unfair to the transferee. I'm raising an argument that it violates the link and the chain between the tax and the war. Counsel, what do I make of the statement in Sebelius that where the Supreme Court specifically cited the NFA as obviously a regulatory tax, in that case on Sadov shotguns, as proof, quote, that taxes that seek to influence conduct are nothing new and that they remain valid exercises of the taxing power? Yes, I think that we agree with that statement insofar as taxes, it's very clear that taxes can influence conduct. But usually that's an incidental effect and you have the tax. I guess my question is if Sebelius relied on the NFA as recently as 2012 as a perfectly fine, obviously regulatory tax and nothing new, then how can we say that very same tax is unconstitutional? For one, Your Honor, as you pointed out earlier, the possession of the unregistered firearm provision was not added until after Sandzinski. But Sebelius is 2012. I understand that they're still relying on the NFA and its scheme as obviously regulatory and nothing new and a valid exercise of the taxing power in order to support the very odd tax at issue in Sebelius. Yes, Your Honor, yes. However, in Sebelius they do also explain that there comes a time when the penalizing features of the statute outweigh or transform the statute from a mere taxing statute into one of criminal punishment and regulation. And I think you need to read Sebelius as a whole and although they did say… I think your time has expired. Your Honor, may I finish the question? You can finish. Take three sentences. Although in Sebelius they did cite Sandzinski as an example of the NFA being a constitutional exercise, as I said, that was prior to this change in the statute and I think if you read the context of the Sebelius opinion, it also says that it's a sliding scale and at some point the overwhelming features of the taxing statute become punishment and regulation. Thank you. Thank you, counsel. We'll take that case under submission.